## John C. Gillespie *v.* John S. Winberg.

The term "ship's husband" is used to designate the person who, in the home port where the vessel belongs, does what the owner would otherwise do—obtains a cargo for her and attends to everything essential to the due prosecution of the voyage for which the cargo has been obtained. Whilst the ship is abroad the master is empowered to do all that is essential during the voyage. He may be said to be then the ship's husband, except so far as he may be limited by his instructions, and if the duties which he would otherwise discharge in a foreign port with respect to the vessel, such as entering her at the customs, collecting the freight, obtaining a cargo and clearing the vessel, are, by the owners' directions entrusted to a person at that port, then she is consigned to that person, and he is properly called the " consignee."

Such a person is the one meant in the act to amend the pilot laws (Laws of 1857, p. 502, ch. 243), which provides that pilotage shall be paid by the master, " owners or consignees," where the master refuses to take a pilot upon coming into the port of New York by way of Sandy Hook.

It being provided by the original act of 1853 (Laws of 1853, p. 925, ch. 467, § 18), to which the act of 1857 is amendatory, that the pilotage shall be payable by the master, owner, consignee or agent *clearing the vessel*. The term " consignee,"

as there used, means the consignee of the vessel, and not of the goods, and the term "consignees" in the amendatory act must be taken to mean those upon whom, under that designation, the duty of paying pilotage was previously imposed.

In an action under the act of 1857, for refusing to take a pilot on board, it appeared that the defendant was a ship broker who had procured a cargo for the vessel and cleared her at the custom house for Baracoa, where she took in a cargo, and that upon returning here with a cargo consigned to a third person, the captain reported to the defendant, who collected the freight and paid the bills for the vessel and cleared her for another voyage. Upon coming into New York on her return from Baracoa, she refused a pilot; *Held*, that the defendant was the consignee within the meaning of the act, and the action was properly brought against him.

The act of 1857 is to be liberally construed, since it is a remedial statute, both in the fact that it is amendatory of a defect in an existing law, and that the statute of which it is amendatory, is in the nature of a public regulation for the protection of life and property, which may be put in peril from the want of proper precaution in navigating vessels entering the harbor of New York. Such a statute is to be liberally and beneficially construed and everything is to be done in advancement of the remedy, that can be done, consistently with any construction that can be put upon it.

APPEAL by plaintiff from a judgment of a District Court. The facts are stated in the opinion.

BY THE COURT.*—DALY, CH. J.—It appeared from the evidence that the pilot was on pilotage ground when he hailed the vessel, and as the justice, in denying the motion for a nonsuit, was of the opinion that the master pretended not to hear the pilot, there was a palpable violation of the provisions of the act of 1857. As the justice afterwards dismissed the complaint, it must have been the ground that it appeared to him by the subsequent testimony that the defendant was not the consignee within the meaning of the 29th section of the act, and the point to be examined, therefore, is whether the justice was right in that conclusion.

That section (Laws of 1857, p. 502, ch. 243) provides that " All masters of foreign vessels and vessels from a foreign port, and all vessels sailing under register, bound to or from the port of New York by the way of Sandy Hook, shall take a

---

* Present, DALY, Ch. J., LARREMORE and J. F. DALY, JJ.

licensed pilot; or in case of refusal to take such pilot; shall himself, owners or *consignees*, pay the said pilotage as if one had been employed, and that such pilotage shall be paid to the pilot first speaking or offering his services as pilot to such vessel."

The vessel came from Baracoa with a cargo of fruit consigned to a Mr. Pearsall, of this city. The master upon his arrival reported to the defendant, who is a ship's broker, and who, it appears, had, at the captain's request, obtained the charter for this voyage; the master signing the charter party as master and agent of the vessel, the owners of which reside in the State of Maine. She was cleared at this port by the defendant, and as he obtained the charter for her, and the captain, upon her arrival here, reported to him, he, in all probability, entered her at the customs, but the fact does not appear in the evidence. It appears from the defendant's testimony that he paid her bills and that the freight was paid to him by Pearsall, the consignee of the cargo, circumstances which show that he acted to this extent as the agent of the owners. He was asked if he would have paid a bill for pilotage had one been presented, and answered "I do not know what is the custom;" upon which he was asked if he had ever paid pilot bills before, and he replied "that he had very often, but not for this vessel to his knowledge." He was asked "What do you consider the consignee of a vessel to be?" and he answered "Where the cargo comes to."

*Consignor* and *consignee*, in the ordinary mercantile acceptation of these words, signifies the shipper of merchandise and the person to whom it is addressed. *To consign*, in the mercantile law, is ordinarily to send or transmit goods to a merchant or factor for sale, and a consignee is consequently the person to whom they are consigned, shipped or otherwise transmitted. The radical meaning of the word "to consign," which is of French origin, is to deliver or transfer as a charge or trust (Landar's Dictionnaire de la Langue Francais; Burrill's Law Dictionary); and the common definition of it by English lexicographers is, "to commit, intrust, give in trust (Crabbe's Synonyms; Soule's English Synonyms, Boston, 1871; Smith's

Synonyms Discriminated, N. Y. 1871; Webster's Dictionary, unabridged; Richardson's Dictionary). It is, as Crabb comprehensively defines it, "transferring from oneself to the care of another." When used in connection with a vessel, it generally refers to the goods which are shipped by her, for the vessel itself is in the charge of the master, who is, with respect to it, the agent of the owners, and clothed, by virtue of his appointment, with authority to do, whilst the vessel is abroad, whatever is essential in the prosecution and protection of the interests of his employers.

But both vessel and cargo may be consigned to a person at the port of destination, and where that is the case he is styled amongst merchants the consignee (McElrath's Dictionary of Commercial Terms); or the vessel alone may be consigned, and where a person is authorized to take charge of her upon her arrival, to collect the freight, pay all her expenses, obtain a cargo for her, and who, by virtue of this authority, enters and clears the vessel at the customs, he may, I think, be termed the consignee, for she is for that purpose and to that extent consigned to him.

Where duties of this description are discharged at the home port or place where the vessel belongs, by a person appointed by the owners, he is known by the maritime term of the "ship's husband" (Story on Agency, § 35; Abbott on Shipping, Part I, c. 3, p. 105, 8th Lond. ed.; 1 Bell's Com. 410, 411, §§ 426, 428, 429, 4th ed.; Id. 504, 505, 5th ed.; 1 Parsons on Shipping and Admiralty, 109). "He is, as it were," says Beawes, "a steward at land to the owner of the ship, as the officer bearing that name is on board when the ship is at sea (Beawes' Lex Mercatoria, p. 47); and as the power of the master to enter into contracts, &c., is superseded in the port of the owners, so is it by the presence of the ship's husband (1 Bell's Com. id).

From the nature of the powers delegated by the owners to the ship's husband, who, in virtue of his employment, by long established usage, sees to the outfit for the voyage, the furnishing of provisions and stores, engages the master and crew, collects the freight, adjusts averages, enters into charter par-

ties, or engages the vessel for general freight, clears her at the customs, and pays all bills and charges, whether he is in funds or not, the vessel may be said to be consigned to (that is, intrusted to) him, and there is no violation of language in calling him also a consignee, for such he is in fact, as the vessel, within the generic and ordinary meaning of the word, is consigned to him for the purposes and objects above stated.    Savary, in defining the various significations of the French word " consigner," says, " On dit aussi en ce sens, consigner un vaisseau, le remettre entre les mains du marchand qui doit en faire le chargement " (Savary's Dictionnaire Universel de Commerce, Amsterdam, 1726).    And the same definition is given in Laudais, one of the most recent of French lexicographers.

So far as my information extends, this " expressive maritime phrase," as Story calls it, of " ship's husband," is used only to designate the person who, in the home port, where the vessel belongs, does what the owner would otherwise do, obtains a cargo for her, and attends to everything essential to the due prosecution of the voyage for which the cargo has been obtained, and it is as designating a person of this description residing at the place where the vessel belongs, that the term is used in the statutes of the United States (Act of 31st of Dec., 1792, § 3 ; Dunlop's Laws of the U. S. p. 107).    According to Beawes, he " collects the freight both at home *and abroad,* pays all the ship's disbursements, and makes out an account of all these transactions for his employers, the owners of the ship " (Beawes' Lex. &c. p. 47).

Whilst the ship is abroad, the master is empowered to do all that is essential during the voyage.    He may be said to be then the ship's husband, except so far as he may be limited by his instructions ; and if the duties which he would otherwise discharge in a foreign port, with respect to the vessel—such as entering her at the customs, collecting the freight, obtaining a cargo, and clearing the vessel—is, by the owners' directions, intrusted to a person at that port, then, in my judgment, she is consigned to that person, and he may, with entire propriety, be called the consignee.

When the statute imposes upon the consignee, as well as

upon the master and the owners, the obligation of paying pilotage, where the master refuses to take a pilot upon coming into this port, it is obvious that what the statute means, is a person to whom the vessel is consigned. The general act of 1853, of which this act of 1857 is merely amendatory, declares that the pilotage shall be payable by the master, owners, con-. signee or agent entering or clearing the vessel (Laws of 1853, p. 925, ch. 467, § 18). By the word consignee, as here used, is evidently meant the consignee of the vessel, where there is one, and not a consignee of the goods shipped by her, of whom there may be a great number. It would, I think, be an unreasonable interpretation of the statute, to hold that it meant to impose the obligation of paying pilotage upon any and every one having goods consigned by her. The general statute having declared who are to pay the pilotage, we must suppose that the subsequent act requiring the payment of pilotage, where the master refuses to take a pilot, meant by consignees those, upon whom, under that designation, the duty was previously imposed; that is, the consignee, or consignees of the vessel, where there are persons holding that relation to her in this port.

There is nothing in the evidence to show that Pearsall, the person to whom the cargo was consigned, had anything to do with the care, management, employment, or earnings of the vessel. All that appears is that he paid to the defendant the freight for the transportation of the merchandise which was consigned to him. As the entire cargo was consigned to him, he may have entered into a charter party for the carriage of it from Baracoa to this port, but even that cannot be assumed, for it may have been, from all that appears in the case, that the charterer was another person. The defendant was asked if the schooner was consigned to him, and he answered: "No, sir. To Mr. Pearsall the cargo comes to." He was then asked what was his business, and replied: "Ship broker. The captain comes to me to procure a charter for her;" and afterwards, in reply to another question, he said: "The captain signs the charter party as master and agent of the vessel. I am not the agent or owner." When asked how he construed his name

upon the manifest, he answered: "Because the vessel was cleared by us," and added further that she had been cleared by him twice since. It may be inferred from this, which is all that there is respecting the chartering of her, and from the other evidence, that the defendant, upon being applied to by the captain, obtained a charter for the carriage of a cargo of fruit by the schooner from Baracoa to New York; that the defendant cleared the vessel at this port; that upon her arrival. here in the completion of that voyage, the captain reported to him; that the cargo was consigned to Mr. Pearsall; that Pearsall paid the freight for the carriage of it to the defendant, and that the defendant had cleared the vessel twice from this port since. There is nothing, in my judgment, upon this state of facts, to warrant the conclusion that Pearsall was a consignee chargeable with the payment of pilotage within the meaning and intent of the statute. The fact that the entire cargo was consigned to him did not make him the consignee of the vessel, any more than if he had simply been the consignee of a single box of merchandise transmitted by her. His relation to her was nothing more than that of any other consignee of goods transported by a vessel, which was simply to receive his merchandise and pay the freight for its carriage.

The question then remains, was the defendant the consignee within the meaning of the statute, and it appears to me that the duties which he discharged respecting her in this port, were ordinarily of the kind which appertain to a consignee of a vessel, as contradistinguished from a consignee of the cargo in whole or in part. The French definition of Savary, previously quoted, of the consignee of a vessel, is one in whose hands a vessel is put to obtain a cargo for her. This was one of the duties which the defendant discharged. The interpretation to be put upon his testimony is that the captain came to him to procure a charter for the schooner. That, having done this, the defendant cleared the vessel for Baracoa, where she took in a cargo, and that upon returning here in the completion of that voyage, the captain reported to the defendant, who thereupon did what would be done by the consignee of a vessel at the port of destination; he collected the freight, paid

the bills, and cleared the vessel, for, as we may suppose, another voyage or adventure. Whether he was authorized to do this by the owners, or by the master, does not appear by the evidence, nor is it material to inquire. It is sufficient, so far as he is concerned, that he assumed to do what he did as the agent or representative of the owners, and by doing so constituted and made himself the consignee of the vessel in this port.

In determining what is meant by the term consignee in the statute, we are to be guided by the general rule which prevails in the construction of a statute, which is to consider the mischief which it was designed to suppress, and the nature of the remedy it meant to apply; and in doing this, this statute is to be largely and not strictly construed, for it is a remedial statute, both in the fact that it is amendatory of a defect in an existing law, and that the statute of which it is amendatory is in the nature of a public regulation for the protection of life and property, which may be put in peril from the want of proper precaution in navigating vessels entering the harbor of New York. Such a statute is to be liberally and beneficially construed, and everything is to be done in advancement of the remedy that can be done, consistently with any construction that can be put upon it (*Thorpe* v. *R. & B. R. R. Co.* 27 Verm. 147; *Stuyvesant* v. *The Mayor of New York*, 7 Cow. 604, 605; *Hart* v. *The Mayor of Albany*, 9 Wend. 571; *Gillett* v. *Moody*, 3 N. Y. 479; *Van Hook* v. *Whitlock*, 2 Edw. 304; *Johns* v. *Johns*, 3 Dow. 15; Dwarris on Statutes, by Potter, pp. 73, 74, 184, 185).

The design of this amendatory act of 1857 was to make it obligatory upon every master of a foreign vessel or one from a foreign port, or any vessel sailing under register bound to or from the port of New York by the way of Sandy Hook, to take a pilot, and that there might be no motive for evading this regulation, it was enacted that if such master should refuse to take a pilot; pilotage should be paid by the master, the owners, or consignees, the same as if one had been employed, giving a right of action to recover it to the pilot first speaking or offering his services to the vessel. Consignees were evidently included, from the difficulty and in many cases im-

possibility of collecting the pilotage, by action from the owners, or masters of foreign vessels, and because consignees, from the relation which they hold to the owners, and the fact that the freight collected at the port of destination usually comes into their hands, are able to protect themselves.

This was the defendant's position. He collected the freight and paid the bills. His business is that of a ship's broker, and he testified that he has paid bills for pilotage very often; so that he knew that this was one of the charges against a vessel coming into this port, and having the means in his hands wherewith to pay it, he would have been justified in doing so, as it was an obligation imposed by law. In my judgment he was a consignee, within the meaning and intent of the statute, and for that reason, in my opinion, the judgment should be reversed.

Judgment reversed.