Fisher, J.
This is an appeal from an order entered in the City Court of Buffalo restraining the plaintiff from any proceedings for enforcement or collection of a judgment. Said judgment was alleged to have been discharged in bankruptcy proceedings.
*673 Section 17 of the Bankruptcy Act (U. b. Code, tit. 11, § 35, subd. [a]) provides: “ (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another ’ ’.
The question here is whether the conversion of the automobiles consigned to the defendant or the conversion of the money received therefor constituted “ willful and malicious injuries to the * * * property of another ’ ’ which removes the indebtedness from the defendant’s discharge in bankruptcy.
The automobiles were, as the proof shows, sent on consignment by the plaintiff to the defendant. This means that the title to the automobiles was retained by the plaintiff. The relationship between the plaintiff and the defendant with respect to the automobiles was that of bailor and bailee. (Ballentine’s Law Dictionary [2d ed.], p. 266; Gillespie v. Winberg, 4 Daly 318; Rolker v. Great Western Ins. Co., 4 Abb. Ct. App. 76, 83.)
The modus operandi of the dealings between the plaintiff and defendant contemplated that the defendant would sell the cars consigned to him by the plaintiff without its consent or authorization. Its only interest was in obtaining the consignment price before giving up muniments of title to the automobile.
In proving up the default judgment in the City Court plaintiff called Miss Watson, the treasurer of the plaintiff, to the witness stand. She testified: “ Q. And for how much was this consigned to Mr. Johnson? A. Consigned for $400.00. Q. Now, what was Mr. Johnson to do with that automobile? A. He was to sell the car and, at that time, bring us the $400.00 and I would give him an M. V. 50 or a bill of sale. Q. And you would give him a bill of sale when he brought you the $400.00 for the car? A. That is right.”
The second automobile was consigned for $1,100 on May 17, 1950. The defendant paid $900 on the consigned price and there remains due the sum of $200.
The third automobile was consigned to the defendant on August 8, 1950, for $1,550. During the same month, he paid $1,450 of the price.
She further testified: “ We let him take the car for re-sale. We consigned it to him for the amount of money. And if and when he sold the car, he was to pay us the amount it was consigned for; and what he got over and above, was his for handling. And when he brought that it was consigned for, I gave him a bill of sale and transferred the title to him.”
*674 In Davis v. Aetna Acceptance Co. (293 U. S. 328), a case cited by neither party in their briefs — the court reversed a judgment obtained by Aetna against Davis who had received a discharge in bankruptcy. Plaintiff was a dealer in automobiles, selling them at retail in his salesroom. He borrowed $1,187.87, 90% of the price of an Auburn automobile from Aetna and supplied the other 10% of the price himself. He delivered to Aetna, for the sum owing, a promissory note, a chattel mortgage on the automobile, and a trust receipt in which he agreed to hold the automobile as the property of Aetna. The court said at page 330: “ On August 3, 1929, the automobile, then on exhibit in the petitioner’s showroom, was sold by one of his salesmen, and thereupon or soon afterwards petitioner received the price. There is a stipulation that the sale was made without concealment and in the ordinary course of business, though without written consent. According to the petitioner’s testimony, notice of the transaction was given the same day to one of the respondent’s officers. There is also testimony tending to support the inference that on many other occasions cars held upon like terms had been sold without express consent and the proceeds accounted for thereafter. On this occasion the petitioner promised to make prompt remittance of a check, subject to an offset or credit growing out of their other dealings. He did not keep his promise. Instead, he filed a petition in bankruptcy on September 13, 1929, obtaining later his discharge after duly listing the respondent in his schedule of creditors. ’ ’ And at page 332: “There is no doubt that an act of conversion, if wilful and malicious, is an injury to property within the scope of this exception. Such a case was McIntyre v. Kavanaugh, 242 U. S. 138, where the wrong was unexcused and wanton. But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. * * * [Cases cited.] There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one.”
The case of Bank of Williamsville v. Amherst Motor Sales (234 App. Div. 261) is clearly distinguishable, for in that case there was no showing that the parties contemplated as they did in the instant case that the defendant would sell the consigned automobiles and bring the proceeds thereof to the extent of the consigned prices to the plaintiff in exchange for the title papers.
*675 It appears reasonably clear that the sale of the automobile was not a liability for “ wilful and malicious injuries ” to plaintiff’s automobiles consigned to the defendant under the system by which they carried on their dealings, for it appears from the testimony of plaintiff’s treasurer that sales of the automobiles by the defendant and the collection of the consignment price and the payment of the same to plaintiff was contemplated before plaintiff would turn over the title papers. Under such circumstances, it does not seem that the sales constituted ‘‘ wilful and malicious injuries ”.
Nor does it appear under the circumstances that the defendant’s failure to remit the full amount of the consignment prices constitutes a willful and malicious injury to plaintiff’s property, even though plaintiff may have technically converted the unpaid sums. It should be recalled that plaintiff consigned a 1940 Buick automobile to defendant on May 25, 1950, at the price of $400. It is alleged that no payment was made on this price. The second automobile, an Oldsmobile, was consigned on May 17, 1950, at $1,100. On July 24, 1950, defendant paid plaintiff $900 of the consignment price. The third automobile was an Oldsmobile which plaintiff consigned to defendant on August 8, 1950. On August 26,1950, defendant paid plaintiff $1,350 on the consignment price of this automobile.
The proof in this case fails to show a liability of defendant for willful and malicious injuries to property of the plaintiff and that the indebtedness of the defendant arising out of defendant’s failure to pay the sums alleged, is barred by defendant’s discharge in bankruptcy.
The order of the City Court of Buffalo is affirmed, with costs.