**AB RECUR FINANS, Plaintiff,**

v.

**NORDSTERN INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**99 Civ. 1171(LLS).**

United States District Court,
S.D. New York.

Feb. 20, 2001.

Drinker Biddle & Reath LLP, New York City, Charles D. Donohue, of counsel, Kilpatrick Stockton LLP, Atlanta, GA, Edmund M. Kneisel, of counsel, for plaintiff.

Roseman & Colin LLP, New York City, Michael Verde, Philip A. Nemecek, of counsel, for defendant.

## OPINION and ORDER

STANTON, District Judge.

Plaintiff AB Recur Finans ("ABRF"), a Swedish corporation and finance company, brings this action against defendant AXA Nordstern Art Insurance Corporation of North America, a New York corporation (successor to named defendant Nordstern Insurance Company of North America)

("Nordstern") for payment, up to Nordstern's million dollar policy limit, of a judgment entered in ABRF's favor against Nordstern's insured, Judson Art Warehouse, Inc. ("Judson").

Nordstern seeks summary judgment dismissing the complaint, and ABRF cross-moves for summary judgment in its favor. No material facts are in dispute.

## Background

### 1. *Undisputed Facts* [1]

Judson Art Warehouse, now defunct, operated a warehouse facility where it catalogued, stored, shipped and displayed antiques and works of art for private collectors, dealers and others.

Up until 1991, it was covered by successive insurance policies for warehouseman's legal liability issued by Nordstern (the "Policy").

In 1989 Lennart Andersson (a Swedish art dealer) bought a Cy Twombly painting from Peder Bonnier by borrowing $2,000,000 from Fortune Finans AB ("Fortune"), the plaintiff ABRF's predecessor in interest.

When Andersson received title to the painting he granted Fortune a security interest in it. Judson (in whose warehouse the painting was stored for Andersson) signed an agreement (the "Notification Agreement") in which Judson acknowledged Fortune's security interest in the painting and agreed not to release the painting to any party, including Andersson, without Fortune's prior consent.

Andersson soon defaulted on his loan repayments to Fortune. Bonnier, unpaid, asked Judson to return the painting to him, which it did, unfortunately without informing Fortune or obtaining Fortune's consent. When Bonnier received the painting, he resold it to a third party.

This left Fortune unpaid, the painting gone, Andersson in default (his whereabouts unknown[2]), and Judson liable to Fortune for its erroneous delivery of the painting. Predictably, Fortune sued Judson for $2,000,000 in the Supreme Court of the State of New York, New York County[3]. Judson notified its insurance carrier, Nordstern, which defended Judson while reserving its rights to contest coverage and to claim indemnity under the Policy.

During the lawsuit, ABRF acquired Fortune's assets and was substituted as successor in interest to Fortune's claims.

On July 7, 1995, following a non-jury trial, Justice Edward Greenfield held that Judson was liable for breach of its agreement not to release the painting without Fortune's consent, and that ABRF was entitled to recover $2,000,000 plus accrued prejudgment interest. Justice Greenfield rejected Judson's cross-claims against Bonnier for fraud and conversion.

On July 31, 1995, Nordstern wrote Judson denying coverage for Judson's liability, advising that it would cease paying Judson's defense costs in the action, and for the first time raising a defense to coverage based on Sections 2(A) and 3(C) of the Policy, which limit its liability to 30¢ per pound.

When Nordstern refused ABRF's demands to pay its share of the $2,988,780.82 judgment entered against Judson and in favor of ABRF, ABRF filed this lawsuit seeking $1,000,000 in damages (the maximum amount allowable under the Policy) with accrued interest from August 21, 1995.

---

**1.** These facts are taken from the "Agreed Findings of Fact" submitted by both parties in a Consent Pre–Trial Order dated May 18, 2000.

**2.** "Unfortunately, Andersson has failed to appear in the action and there are unconfirmed reports that he has attempted suicide in Swe-

den." Letter from its counsel to Nordstern dated July 12, 1990.

**3.** *Fortune Finans AB v. Lennart Andersson, Peder Bonnier, Inc., and Judson Art Warehouse, Inc.,* Index No. 9422/90, Supreme Court of New York County.

### 2. *The motions for summary judgment*

Nordstern now seeks dismissal of the complaint on the grounds that the liability Justice Greenfield imposed on Judson is not covered by the Policy because (1) it rested on breach of a contract (the Notification Agreement) rather than Judson's status as a bailee, (2) it did not result from a "loss, damage or destruction of" the painting, (3) Judson's misdelivery was a "willful conversion" which is excepted from the Policy coverage, and (4) the Policy's limitation of liability to 30¢ per pound confines any indemnity liability to less than its $1000 deductible.

ABRF disputes each ground, and seeks judgment that as a matter of law Nordstern has breached its obligations to satisfy the Judson judgment up to the full Policy limit.

### Discussion

Summary judgment should be granted when the submissions of the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Under New York law, the construction of unambiguous insurance contracts "is solely a question of law for the court." *Caporino v. Travelers Ins. Co.*, 62 N.Y.2d 234, 476 N.Y.S.2d 519, 521, 465 N.E.2d 26 (Ct.App.1984). "If the provisions are clear and unambiguous, courts are to enforce them as written," according to their plain and ordinary meaning. *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir.1995); *accord Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co.*, 961 F.2d 387, 389 (2d Cir.1992).

**4.** Under Section 9–305, "A security interest in ... goods ... may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest."

The burden is on the insured to prove that a loss falls within the policy's coverage. *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 36 F.Supp.2d 605, 608 (S.D.N.Y.1999). However, it is the insurer's burden to demonstrate that a loss falls within a policy's exclusion. *Sea Ins. Co., Ltd. v. Westchester Fire Ins. Co.*, 51 F.3d 22, 26 (2d Cir.1995) ("To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.").

### 1. *Whether the judgment against Judson constitutes "liability imposed by law upon the insured as bailee" under the Policy*

Under Section 2(A) of the Policy, Nordstern must

> pay on behalf of the Insured [Judson] all sums for which the Insured shall become legally obligated to pay by reason of the liability imposed by law upon the Insured as a bailee, resulting from loss, damage or destruction of fine arts property of others only while in the care, custody or control of the Insured ...

Policy § 2(A).

There is no dispute that Judson was acting as Andersson's bailee when it held the painting for him in its warehouse. *See* 9 N.Y. Jur.2d Bailments and Chattel Leases § 4 ("The acceptance of custody of personal property by a warehouse for safekeeping or storage is a bailment."). There is also no dispute that Fortune perfected its security interest in the painting when Andersson sent the Notification Agreement to Judson, *see* N.Y.U.C.C. § 9–305 (McKinney's Supp.2000),[4] or that Judson, in signing and returning it, agreed to protect Fortune's interest in the painting.[5]

**5.** Judson agreed to "not release the Art from the warehouse to [Andersson] or to any other person, without the prior written consent of [Fortune]." Notification Agmt. at 2.

Nordstern argues more narrowly, that Judson's liability was not "as a bailee" because Justice Greenfield specifically held that Judson was not liable for breach of "an agreement with respect to storage." He stated:

> Judson here is being held for breach of an agreement, not breach of an agreement with respect to storage, but breach of an agreement with a third party beneficiary to hold the goods and not release them without written consent.

Trial Findings at 56. At that point, Justice Greenfield was not considering the character of Judson's ultimate liability, but distinguishing it from one whose source lay solely in possession, to which a warehouse receipt limitation might apply. He was not defining whether Judson's liability to ABRF was "as a bailee" under the language of the Policy. Indeed, in Justice Greenfield's later opinion denying Judson's motion to set aside the dismissal of its cross-claims, he stated specifically that "Judson has been held liable because it, *as bailee,* disregarded the acknowledged rights of others with a superior claim of right." Opinion dated March 10, 1996 at 5 (emphasis added).

The Notification Agreement was embedded in, and essential to, the bailment contract between Andersson and Judson. It effected a modification of the bailment contract: it altered Judson's duty to deliver in accordance with Andersson's (the bailor's) instructions by requiring prior recognition of Fortune's security rights.

When Judson received notice of Fortune's security interest, Judson became legally accountable to Fortune with respect to that interest, creating a constructive bailment between it and ABRF. *See* N.Y.U.C.C. § 9–305, Cmt. 2 (McKinney's Supp.2000)("Where the collateral ... is held by a bailee, the time of perfection of the security interest,... is when the bailee received notification of the secured party's interest: this rule rejects the common law doctrine that it is necessary for the bailee to attorn to the secured party or acknowl-

edge that he now holds on his behalf."). Judson's subsequent consent to the terms of the Notification Agreement confirmed its position as Fortune's bailee. *In re Atlantic Computer Systems Inc.,* 135 B.R. 463, 465 (Bankr.S.D.N.Y.1992)(bailee's participation and signed acknowledgment of security interest was, in effect, attornment to secured party.).

Judson's status as a bailee was fundamental to its obligations to Fortune, and its liability for breach of the Notification Agreement was imposed on it "as a bailee" under the Policy.

2. *Whether misdelivery of the painting is considered "loss, damage, or destruction" under the Policy.*

■ Under Section 2(A) of the Policy, Nordstern agreed to indemnify Judson for liability

> resulting from loss, damage or destruction of fine arts property of others only while in the care custody or control of the Insured on their premises or while in the course of incidental transit thereto and therefrom.

Policy § 2(A).

Judson's mistaken delivery of the painting to Bonnier resulted in its loss to Andersson, and (to the extent of its possessory security interest) to Fortune, as that term is commonly understood. *See* Webster's Ninth New Collegiate Dictionary 706 (1985) (defining loss as "the act of losing possession"). As Judson's liability was predicated on that act, it is covered within the plain and ordinary meaning of the Policy.

3. *Whether coverage is excluded by the Policy's "willful conversion" exclusion*

■ Section 4 of the Policy states that it "does not insure liability for: ... willful illegal sale of property by the Insured; willful conversion or willful or wrongful secretion." Policy § 4.

Nordstern contends that Judson's actions constitute willful conversion under § 4, quoting Justice Greenfield's finding that Judson "had deliberately undertaken to deal with the goods in a manner inconsistent with the plaintiff's property rights." Trial Findings at 58–59.

The liability imposed upon Judson in the underlying action was not for conversion, but for its breach of the conditions of the bailment. Judge Greenfield's finding that Judson's release of the painting to Bonnier was "deliberate" does not mean that it was a "willful conversion".

The Policy's use of the phrase "willful conversion" can only mean something more than simple conversion. Under New York law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dept.1981). Simple conversion (even though "deliberate") does not require a specific intent to deprive an owner of its possessory interest, so to be a conversion, it need not be "willful":

> Since a wrongful intent is not an essential element of conversion, an act of dominion done under mistake or misapprehension, and without conscious intent to violate right or authority, may yet be a conversion; but it is not a willful and malicious conversion.

*Brown v. Garey,* 267 N.Y. 167, 169–70, 196 N.E. 12 (Ct.App.1935)(internal citation omitted). *See also, Riefler Buick, Inc. v. Johnson,* 1 Misc.2d 672, 148 N.Y.S.2d 234, 237 (1955)("But a willful and malicious injury does not follow as of course from every act of conversion, ... There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one.").

Although the underlying record established that Judson intentionally delivered the painting to Bonnier, and that those actions deprived Fortune of its security interest (and breached the Notification Agreement), nowhere is it even hinted that Judson acted with the specific intention of depriving Fortune of its interest. Therefore, even if Judson's liability were for conversion, there is no basis for calling it "willful."

### 4. Whether Nordstern's indemnity obligation is limited to 30¢ per pound under the Policy

■ Nordstern argues that under Sections 2(A)[6] and 3(C)[7] of the Policy, its indemnity obligation to Judson is limited to 30¢ per pound. Since the Policy deductible is $1000, if the 30¢ per pound limitation applied, Nordstern would have no indemnity obligation to Judson unless the painting weighed over 3,333 pounds.

ABRF contends that because Nordstern raised the limitation for the first time in its July 31, 1995 letter to Judson disclaiming coverage—more than five years after the commencement of the action—it had either waived or is estopped from asserting the limitation. Alternatively, ABRF argues that Justice Greenfield's finding that the 30¢ per pound weight limitation in the warehouse receipt was inapplicable to Judson's liability for breach of its duty to Fortune collaterally bars Nordstern from relying on that limitation in this proceeding.

Although Nordstern knew of the 30¢ per pound limitation, and urged it in Judson's

**6.** Section 2(A) states that "Coverage is, however, subject to the limit of liability of the company as stated in the warehouse receipt issued by the insured to owners of property (copy attached herewith), or as otherwise hereinafter provided."

**7.** Section 3(C) states that "in no event shall the company be liable for more than $.30 per pound, which is the limit of recovery as stated in the warehouse receipt issued by the insured."

defense in the state court action, it never told Judson that the weight limitation, when coupled with the Policy's deductible, relieved Nordstern of any obligation to indemnify Judson (or, indeed, that it intended to assert the 30¢ per pound limitation clause in the Policy as a limit on its coverage). The first time [8] Nordstern asserted the limitation was in its disclaimer letter:

> Finally, any coverage for this loss would be limited by paragraph 3(C), which limits Nordstern's liability to "$.30 per pound." Pursuant to paragraph 5 of the policy, Nordstern is not liable for any loss which does not exceed $1,000; Nordstern's theoretical liability for the art in question would be far less than $1,000, and there would therefore again be no coverage for this loss.

Disclaimer Ltr. at 1–2.

By the time of that disclaimer, five years had passed since the commencement of the lawsuit, all of Judson's defense had been conducted by Nordstern's counsel, and a final judgment had been entered against Judson. During that time, it appears that Nordstern misrepresented to Judson that if Judson retained its own counsel it would have to pay their fees. From the fact that ABRF offered, even after judgment, to settle the case for less than half the judgment amount, one may wonder whether it could not have been settled advantageously before judgment.

That five-year delay, unexplained by Nordstern, in asserting the limitation as a ground for avoiding coverage is unreasonable as a matter of law. *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 541, 389 N.E.2d 1061 (Ct. App.1979)("as here, there is absolutely no explanation for the delay provided by the insurer, a delay of two months is, as a matter of law, unreasonable.").

Normally, mere unreasonable delay is not enough to estop an insurer from claiming non-coverage, but (under general principles of estoppel) the insured must show prejudice as well. However, where the insured has lost its entire right to defend itself, prejudice is presumed as a matter of law:

> under the common law rule, prejudice must generally be established as the result of an unreasonable delay in disclaiming before an insurer will be estopped from asserting noncoverage. However, it is equally well settled that where an insurer has undertaken the defense of an action on behalf of an insured, with knowledge of the facts constituting a defense to coverage under the policy, and where, during the interim, the insured is thereby deprived of the control of his defense, the former may be estopped from asserting that its policy does not cover the underlying claim.

*Globe Indemnity Co. v. Franklin Paving Co.*, 77 A.D.2d 581, 430 N.Y.S.2d 109, 111 (2d Dept.1980)(internal citations omitted). As stated by the New York Court of Appeals,

> It seems to us quite clear that, in the language we used in *Gerka v. Fidelity & Casualty Co.* (Hubbs, J., 251 N.Y. 51, 167 N.E. 169), the conduct of the defendant here "was inconsistent with its later claim of non-liability under the policy. When it proceeded with the defense of the negligence action, with knowledge of its claimed defense under the policy, it made its election and estopped itself from now urging that defense." So, also, in *Rosenwasser v. Globe Indemnity Co.* (224 N.Y. 561, 120 N.E. 875) we held that where the insurer in an indemnity policy entered upon and exclusively conducted the defense of an action brought against the assured, with full knowledge of all the facts, it could not

---

8. In its reservation of rights letter Nordstern referred to other policy provisions, but not the 30¢ per pound weight limitation.

thereafter assert that the claim for damages was not covered by the policy. Treating the action of the defendant here as constituting an estoppel to now assert noncoverage, we think it was unnecessary, under the facts disclosed here, for the assured to show prejudice to it by the insurer's conduct.

*William M. Moore Const. Co. v. United States Fidelity & Guarantee Co.,* 293 N.Y. 119, 123, 56 N.E.2d 74 (1944). The *Moore* Court quoted with approval *Royle Mining Co. v. Fidelity & Casualty Co.,* 126 Mo. App. 104, 103 S.W. 1098 (1907), in which an insurer who had controlled the defense of its insured throughout trial delayed in disclaiming liability until after judgment:

> "It is immaterial whether plaintiff could or would have compromised the action had it been left free to act, or whether it could have achieved any better results had it controlled the defense."

*Moore,* 293 N.Y. at 124, 56 N.E.2d 74, *quoting Royle Mining,* 103 S.W. at 1100. *See also County of Sullivan v. State,* 137 A.D.2d 165, 528 N.Y.S.2d 227, 229 (3d Dept.1988) ("In our view, notice first provided on the verge of trial, four years after [the insurer] had complete control over the litigation, is untimely and prejudicial as a matter of law."); *Hartford Ins. Group v. Mello,* 81 A.D.2d 577, 437 N.Y.S.2d 433, 435 (2d Dept.1981)(disclaimer two years after knowledge of noncoverage, "during which time [the insurer] had assumed the complete defense of the [action], and after the underlying action had been placed on the trial calendar, ... is prejudicial as a matter of law.").

In *Kearns Coal Corp. v. U.S. Fidelity & Guaranty Co.,* 118 F.2d 33, 36 (2d Cir. 1941), *cert. denied,* 313 U.S. 579, 61 S.Ct. 1099, 85 L.Ed. 1536 (1941), Judge Clark distinguished between cases in which prejudice is presumed from the insurer's conduct of the defense of the trial, and those in which "the insurer has withdrawn at a time and under circumstances where the insured is left an adequate opportunity to defend.... [so that] prejudice to the insured must be shown and ... mere delay in making the disclaimer was not enough." Here Nordstern and its lawyers controlled Judson's defense throughout the entire trial and until after entry of judgment adverse to Judson, so the *Kearns* exception does not apply, and prejudice is presumed as a matter of law.

The wisdom of the law's presumption of prejudice is particularly evident in this case, where Nordstern appears to have misrepresented to Judson that it would have to pay for any defense counsel, where it seems that the claims could have been settled for under half the final judgment amount, and where Judson is now out of business, apparently as a result of the underlying litigation.

Nordstern is equitably estopped from raising the weight limitation.

### Conclusion

For the foregoing reasons, Nordstern's motion for summary judgment is denied.

Judson's liability was incurred as a bailee under the Policy, and none of the exclusions raised by Nordstern bar coverage in this instance. ABRF's motion for summary judgment for payment of the judgment entered against Judson up to the Policy limit of $1,000,000, plus accrued prejudgment interest at the legal rate from August 21, 1995, is granted.

The Clerk will enter judgment accordingly, with costs and disbursements to plaintiff.

So ordered.