David F. Lee, Jr., J.
Plaintiff moves, pursuant to CPLR 3212, for summary judgment. The defendant “ agrees this is a case for summary judgment * * * however, that judgment should be granted for the defendant, not the plaintiff.”
An automobile accident, a one-car accident, occurred on November 27, 1965. Four persons riding in the car, including the operator, were injured, one fatally. Actions were commenced on behalf of the injured persons and the estate of the deceased against the plaintiff Caprari and others, including Hearing Tire Service, Inc. (Hearing), to recover money damages. Hearing, as noted in the memorandum of defendant's counsel, ‘ ‘ conducted two different types of operations * * * One was its tire retreading and wholesale tire business. The other was its garage and service station business which included the sale of retreaded tires at retail.” The plaintiff,.Raymond Caprari, operated a service station and sold tires and accessories. In the personal injury and wrongful death actions, in which Hearing and Caprari were named defendants, it was alleged that the personal injuries and damages, and the wrongful death, “ were caused by the failure of a defective retreaded tire sold by [Hearing] to plaintiff a few days before the accident and sold by plaintiff to [the owner and operator of the car] a few days before the accident.” The actions “ against plaintiff and [Hearing] were brought on theories both of negligence and breach of warranty.” One of the plaintiffs later, prior to trial, ‘ ‘ abandoned her claim of negligence and proceeded only on warranty.” In March, 1968 the actions proceeded to trial. The jury returned verdicts of no cause of action in favor of all defendants on the negligence causes of action and ver *356 diets in favor of each plaintiff in those actions against the plaintiff and Kearing on the warranty causes of action. The verdicts were in the sum of $8,095.04, $2,550, $6,100 and $6,000. The Trial Justice later, in June, 1968, granted judgments in favor of the plaintiff and against Kearing on the cross claims of the plaintiff for the amount of each of the judgments rendered against the plaintiff and Kearing.
It is not disputed that defendant issued a comprehensive general-automobile liability policy, with endorsements, to Kearing that was in force and effect at the time, November 1965. The defendant refused to satisfy the judgments. The plaintiff satisfied in full the judgments of all the plaintiffs in the original, the main actions, and now brings this action “ pursuant to section 167 of the Insurance Law based on its status as a judgment creditor of Kearing whose judgments remained unsatisfied for more than 30 days from the serving of notice of entry of judgment against all required parties.” The action here is brought to recover judgment ‘ ‘ in the amount of $23,927.75 with interest from the 13th day of August, 1968 * * * from the insurer of Kearing ”.
The defendant’s answer, as an affirmative defense, alleges: “ 7. That defendant fully reserved all of its rights of disclaimer under the said policy before undertaking the defense of the said actions, and thereby preserved its right of disclaimer for liability to pay the judgments obtained by plaintiff in the cross-claims.”
The question for determination on a motion for summary judgment is whether, upon all the papers and proof submitted on the motion, the court should, as a matter of law, direct judgment in favor of any party. Here, where only questions of law, “ as the parties agree ’ ’, are presented, and both parties urge that summary judgment should be directed against the other, the question is not whether judgment should be directed in favor of any party, but in favor of which party, the plaintiff or the defendant, should judgment be directed?
As noted in a memorandum submitted by plaintiff’s counsel:
Caprari alleges three causes of action against Hartford:
The first cause of action is based upon the insurance policy issued to Kearing by Hartford.
The second cause of action is based upon waiver or estoppel, or both, on the part of Hartford, based upon the conduct of Hartford * * * preventing Hartford from now claiming that it did not provide liability insurance for Kearing for the claims of the several plaintiffs in the underlying litigation or the cross-claims of this plaintiff upon which judgment was rendered against Kearing.
*357 The third cause of action, also based on waiver and estoppel, alleges prejudice to Kearing in the manner in which Hartford conducted itself in the defense it provided to Kearing in the underlying litigation.
It is not disputed that the policy of insurance issued by defendant to Kearing ‘ ‘ contained the specific provision that any person or his legal representative who has secured judgment against the insured for damages arising from matters and things insured against during the period covered by such policy shall thereafter be entitled to recover under the policy to the extent of the insurance afforded by the policy.”
The defendant undertook the defense of Kearing. A recital of all the correspondence, conversations between counsel, with defendant’s representatives, the settlement negotiations, and the depositions on examinations before trial would serve no useful purpose. It is noted, however, that defendant’s counsel in their memorandum urge:
“ [T]he oral and written notices in 1966, the attempt to have a non-waiver agreement signed, the explanation by Hearing’s own attorney of the effect of Hartford’s action, Hartford’s letter of March 6, 1968, and Hartford’s offer to settle the actions and reserve the rights of both parties on the coverage question, were 1 fair notice ’ to the insured of the company’s position.
“ [Plaintiff] argues in its memorandum that Hartford waived its rights by proceeding to defend the negligence actions without insisting that the non-waiver agreement be signed. Not only is this answered by the Court of Appeals in the Goldberg case [Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N. Y. 148], but in our case it is obvious that to resubmit the non-waiver agreement would have been an idle gesture. Mr. Night had said in his letter of March 16, 1966, to Kearing, (plaintiff’s Exhibit 27 attached to the answering affidavit), that he would recommend signing of the non-waiver agreement provided ‘ Hartford will make an investigation or defend Hearing if the agreement is signed ’. This was precisely what Hartford had agreed to do ten days earlier in its letter of transmittal (Exhibit G-l). Later, Night admitted at pages 49-55 that he would not let or permit his client to sign the non-waiver agreement.
“ In that testimony, the Court will note a confirmation of what we have said concerning products coverage under the garage liability endorsement. At page 50, Mr. Night said:
“ ‘ Now, of course, there was other coverage I felt applicable to this loss and that I had called to the Hartford’s attention.
“1Q.. What other coverage did you claim applied to this loss ?
“1 A. In my letter to Hartford of March 17,1966,1 pointed out to him that the garage comprehensive endorsement in my opinion covered this loss.’
“Hartford’s position was stated by Mr. Pugh in a conversation of May 31, 1966, in which Mr. Pugh apparently told Mr. Night:
“1 That Hartford Accident covered this loss and would defend Hearing because they were convinced that there was coverage under the claim that there was a breach of the implied warranty, and that this was coverage under the garage comprehensive aspect of the policy even though there was a question with regard to the negligence in the manufacture of the tread of the tire, but as to that, Hartford was convinced that this was no longer an issue in the ease.’
*358 “ So we see that even at that early date, both Kearing’s lawyer and Hartford’s representatives, were of the same opinion and that is that if this tire were sold as part of the garage operations, there was coverage for Hearing and Hartford was obliged to defend. That obligation continued up to and through the trial until it was determined at the trial that the tire was not sold as part of the garage operations and, therefore, and at that time, it was determined that Hartford had no obligation to indemnify Hearing.”
On the other hand, plaintiff’s counsel urge in a memorandum:
“ [T]here clearly was prejudice in this ease, as discussed below.
“Moore v. United States Fidelity & Guarantee Co., supra [293 N. Y. 119] is' a case in which the Court of Appeals held the insurer estopped to deny coverage even though the basis for recovery against the insured was a risk excluded under the policy:
“ 1 When it proceeded with the defense of the negligence action, with knowledge of its claimed defense under the policy, it made its election and estopped itself from now urging that defense.’
“ On the question of ‘ prejudice ’ the court continued :
“ ‘ Treating the action of the defendant here as constituting an estoppel to now assert noncoverage, we think that it was unnecessary, under the facts disclosed here, for the assured to show prejudice to it by the insurer’s conduct * * * It is true that, where the insurer has retained control of the insured’s defense to final judgment or to a settlement, many authorities hold that prejudice is presumed or that the assumption of control is a waiver of rights or an election * * * the Hew York decisions seem to tend that way without precise statement of the rule (citing Rosenwasser [224 N. Y. 561], Gerka [251 N. Y. 51], Rosenbloom [153 App. Div. 23] and Utterback-Gleason [193 App. Div. 646, affd. 233 N. Y. 549] * * *).’ * * *
“ Whether or not prejudice must be shown is academic in this case because prejudice existed.
“Hartford took complete and sole charge of the case to the exclusion of its insured and its insured’s personal attorney. It managed every aspect of the case.”
The papers submitted demonstrate that there was, before the actions against Hearing and Caprari were commenced, a coverage question, as to coverage for products liability. When the actions were commenced and the pleadings were sent to the defendant, the defendant, without the benefit of a reservation of rights notice or letter, nor a nonwaiver agreement, took over the defense of the actions, ánd the insured surrendered control of the defense to the insurer, the defendant.
The defendant’s “ Claims Manager ”, Binghamton office, on March 6, 1968 wrote a letter to Kearing’s personal attorney, Mr. Night, a copy being sent to Mr. Samuel J. Hearing, Hearing Tire Service, in which he noted that the defendant had retained counsel to defend Hearing, and that their counsel had alerted Mr. Frank Hearing that he would be called as a witness. That letter, dated March 6, 1968, also stated:
“ The trial of the above cases is scheduled to begin on Monday, March 11,1968 at 10:00 a.m. in the Supreme Court, Broome County.
*359 “You will recall from our previous correspondence and conversations with yourself and Mr. Samuel Kearing that it is the Hartford’s position that there was and is no coverage under the policy for tire manufacturing, retreading operations, products liability, etc. However, the Hartford undertook the defense of the above claims with a full reservation of all rights and defenses afforded it under the policy, including any. questions of whether or not any recoveries made against Kearing Tire would be covered by the policy.
“Would you advise Mr. Samuel Kearing that he is invited to appear at the trial as a representative of Kearing Tire. You are also invited to assist and co-operate in the defense of the claims if you desire to do so.”
Kearing’s personal counsel, in answer to the letter of March 6, 1968 addressed to him, wrote to defendant on March 7, 1968, and in that letter counsel stated :
“ I have your letter of March 6,1968 advising that the trial of the above captioned matter will commence March 11, 1968 in the Supreme Court of Broome County.
“ I have reviewed my file of correspondence and the docket slips of conversations regarding coverage in this ease.
“ On April 27, 1966 I conferred with Mr. Connell and Mr. Pugh with regard to coverage, and at the request of Mr. Connell arranged for an extension of time in which to serve an answer in the case of Marjorie Young v. Kearing, et al, to permit Hartford to make a decision as to whether coverage was in order.
“ Subsequently, at the request of Hartford a further extension of time was arranged by the writer, with the law firm of Chernin & Gold to May 31,1966.
“ On May 31,1966 I was informed by Mr. Pugh, claim manager of Hartford Accident, that Hartford would defend Kearing Tire Service in the several actions described above, and that if Hartford still felt that there was a question of coverage would forward a so-called ‘ reservation of rights ’ letter. My file shows that no such letter was ever sent to me, and I have inquired of Kearing Tire Service and have learned that their files disclose no such reservation of rights either.
“After the original action of Marjorie Young was commenced against Kearing Tire Service, other complaints were served upon your insured. These pleadings were forwarded to your office, and were received by you without any objection, or any contention that there was not coverage for these claims.
“ On September 9, 1966 I was informed by Mr. McVaugh that Hartford had accepted all of the pleadings and would defend Kearing Tire Service. Accordingly, on that day I closed my file and informed my client Kearing Tire Service, by letter, that Hartford had decided that there was no question of coverage.
“ In view of the affirmative statement made to me by your agent, the fact that there has been no reservation of rights on the part of Hartford, and the additional fact that all of the pleadings have been accepted by Hartford without either protest or reservation, I must assume that coverage has been accepted by your company.
“ I should like to point out to you, that other than my conversation with Mr. McVaugh on September 9, 1966, eighteen months ago, there has been no communication from any representative of your company either to me or to the insured with regard to these cases. Under those circumstances I have no choice but to insist that you continue with the defense of these actions and if a verdict is returned against Kearing Tire Service, Inc. that you pay the full amount of such judgment.
*360 “ Kearing Tire Service, Inc., will, of course, co-operate in the defense of these actions in any way you deem necessary. As you know, however, Frank Kearing who was with Kearing Tire Service, Inc. when this accident occurred, is now employed by the Goodyear Tire Company at Horseheads, New York. I assume that you have made arrangements with Mr. Frank Kearing for his attendance at trial and have subpoenaed him.
“ Your letter does not request that Mr. Samuel J. Kearing attend the trial but you invite him to do so. I shall discuss the matter with him and suggest that he attend.
“ Since there has been no communication from Hartford during the many months this litigation has been in process I do not know what demands have been made by the plaintiffs, or whether such demands are within the policy limits. However, if such demands are within the policy limits consider this letter a demand that a settlement be made, and if you fail to do so, and a judgment exceeds the limits of the policy, this will clearly be an act of bad faith, and Kearing Tire Service will hold Hartford responsible for the total amount of such judgment and any costs which may be incurred by it in connection with this litigation.”
On Monday morning, March 11, 1968, before ten o’clock, the attorney retained by defendant to try the main actions on behalf of Kearing, at the request of defendant’s regional claim manager, telephoned Kearing’s personal attorney and informed him of a settlement discussion. In that conversation counsel told Kearing’s personal attorney that he had been told “that the Hartford can’t settle the case because there is no coverage and the only way that the Hartford can participate in this settlement or attempt to settle the case would be if Kearing Tire would agree to the settlement and later on litigate the question of coverage. ’ ’ There was testimony given on pretrial examination that Kearing’s personal attorney replied: “No, no, no. The Hartford’s got the coverage. If the Hartford wants to settle the case, that’s up to the Hartford, but we can’t agree to litigate coverage, because the Hartford’s got the coverage.” The lawsuits, as noted, proceeded to trial.
The facts here are, of course, distinguishable from those that arise in matters involving late notice to the insurer, failure on the part of the insured to co-operate, and limited coverage situations. The circumstance that a cause of action alleged in the complaints in the original, the underlying actions involved the defendant insurance carrier in liability was enough to call upon it to defend the actions. (Doyle v. Allstate Ins. Co., 1 N Y 2d 439; Prashker v. United States Guar. Co., 1 N Y 2d 584, 592; Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N. Y. 148.) Then there is the ‘ ‘ settled law that waiver or estoppel may not be invoked to create insurance coverage where none exists under the policy as written ”. (Simpson v. Phoenix Mut. Ins. Co., 30 A D 2d 265, 268, affd. 24 N Y 2d 262.) In the matter under con *361 sideration, however, the question for determination is not one of coverage under the policy as written.
An insurance carrier may, of course, by its conduct waive the right to assert noncoverage as a defense. The rule, succinctly stated in O’Dowd v. American Sur. Co. of N. Y. (3 N Y 2d 347, 355), is “ that when an insurer defends an action on behalf of an insured, in his stead, with knowledge of facts constituting a defense to the coverage of the policy, it is thereafter estopped from asserting that the policy does not cover the claim ”. However, where there is a disclaimer, or denial of coverage, in time for the insured to have a full opportunity to join in the defense of the action there is no estoppel ‘ ‘ in the absence of a showing that the delay in notification prejudiced the rights of the insured ”.
Bearing in mind the insurance carrier’s usual obligation to provide for the defense of a pending action and the many potential difficulties that might be encountered in such a situation as is presented here, if an insurance carrier, as the defendant here, wishes to control the defense and simultaneously reserve a right to dispute its liability on any aspect of the litigation, on a cause of action alleged, as here, it should do so only with the consent of the insured or upon notice, ‘ ‘ fair notice ’ ’, as referred to in Jewtraw v. Hartford Acc. & Ind. Co. (280 App. Div. 150, 154), to the insured which would afford the insured an opportunity to actively participate, to join in the defense of the action, through counsel of his own choosing, if he so chooses. However, defendant took over and retained control of the defense of the actions, exclusively, and from its retention and control of the defense of the actions without offering its insured, Hearing, by timely or “ fair notice ”, the opportunity to join in the defense, prejudice is presumed. (O’Dowd v. American Sur. Co. of N. Y., 3 N Y 2d 347, 355, supra; Moore Constr. Co. v. United States Fid. & Guar. Co., 293 N. Y. 119, 123-125, citing Gerka v. Fidelity & Cas. Co., 251 N. Y. 51; Rosenwasser v. Globe Ind. Co., 224 N. Y. 561, and other cases; cf. Prashker v. United States Guar. Co., 1 N Y 2d 584, 593, supra.) The defendant having proceeded with the defense of the actions, as it did, made its election and, under the circumstances, is now estopped from asserting non-coverage ; it is estopped from asserting that the policy did not provide coverage for the claims in those actions, and from asserting that the policy does not cover plaintiff’s claim.
The court concludes, upon all the papers and proof submitted, that plaintiff’s motion for summary judgment should be granted.