BERNARD B. LANDERS, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 58343.)

Third Department, February 17, 1977

*Louis J. Lefkowitz, Attorney-General (Thomas P. Zolezzi* and *Ruth Kessler Toch* of counsel), for appellant.

*Costello, Cooney & Fearon (Peter N. Wells* of counsel), for respondent.

MAHONEY, J. Claimant, a public accountant, performed auditing services for the New York State Department of Law during the years 1970 through 1973 and submitted various vouchers for services rendered. The Department of Law, after being advised that claimant's vouchers were false and fraudulent, stopped payment of the same and conducted an investigation. After review, the Department of Law determined that it had been overcharged. Negotiations between the parties concluded in an agreement, dated May 22, 1973, whereby the

department agreed to pay and the claimant to accept the sum of $20,250 in full settlement of vouchers previously submitted in the sum of $89,145 covering all services rendered for the period October 1, 1972 through December 31, 1972. Thereafter, after further review and negotiations an amendment to the agreement was entered into on June 12, 1973 which provided that no remuneration was to be paid claimant for the period of October 1, 1972 through December 31, 1972 but that he was to be paid the sum of $84,330 for all vouchers covering the period of February 1, 1973 through May 31, 1973. The Department of Law, in a series of checks, paid the agreed-upon figure and claimant accepted and cashed the checks. On April 10, 1974 claimant filed a claim against the State for the full amount of his vouchers, $89,145, covering the period from October 1, 1972 through December 31, 1972. The State, in its answer, affirmatively set forth a defense of accord and satisfaction, premised on the two above-identified agreements, and moved for summary judgment dismissing the claim. In opposition to the State's motion claimant asserts that both agreements are voidable, if not void, on the ground that at the time of their execution he lacked the requisite capacity to contract because of severe anxiety occasioned by personal problems exacerbated by heavy drinking and drugs and by economic duress by the State to a degree that compelled his contractual assent against his will.

Initially, the State's contention that claimant can only raise the issue of duress by amendment to his claim is rejected. Claimant need not have anticipated the affirmative defense of accord and satisfaction and negated the same in his claim. He is within his right by attacking the affirmative defense by personal affidavit (1 NY Jur, Accord and Satisfaction, § 36).

There is sufficient support in the record to sustain claimant's contention that he was undergoing a period of severe emotional strain which he unwisely attempted to alleviate by excessive indulgence in alcohol and drugs during the time frame encompassing the May 22 and June 12, 1973 agreements. However, the record also demonstrates that claimant's emotional condition was not only not the fault of the State but, further, was unknown to the State's representative on the dates the subject agreements were executed. Next, claimant's actions immediately following the May 22 agreement evidence that he understood its content. He discovered an error in the State's computation of voucher adjustments and wrote to the

State thereby causing the agreed upon sum to be increased to his advantage. Claimant's conduct subsequent to the June 12 contract likewise belies his contention that he lacked contractual capacity. The June 12, 1973 agreement, in addition to providing for the amount and method of payment to claimant for all services rendered through May 31, 1973, also stated that claimant was deemed qualified to perform audits for the Department of Law effective June 1, 1973 and claimant, in fact, did continue to be so employed. On June 28, 1973 claimant wrote to the Department of Law expressing his gratitude for the department's consideration and co-operation with respect to the work he was continuing to provide. Thus, in our view, claimant's emotional condition at the time of executing the two subject contracts was such that he understood the nature and content of both contracts and signed each with the requisite contractual capacity.

Similarly, we find no economic compulsion attributable to the State that caused claimant to contract under duress. To prevail on this point claimant would have to sustain the burden of proving that the State had unlawfully threatened him in a manner that deprived him of his unfettered will. The record is to the contrary. It is not disputed that claimant had overcharged the State. Certainly, the suspension of claimant pending a resolution of the disputed items and statements that no future work of a like nature would be forthcoming if the overcharger did not agree to make adjustments in his claims is not coercive conduct so much as it is an insistence that the State would resort to legitimate and legal redress in the absence of compromise on claimant's part. There is no evidence that the State made improper demands or resorted to extortive measures. The fact that claimant may have been financially constrained to accept a sum less than the adjusted amount did not constitute economic duress or, as the Court of Claims stated, "business necessity" *(Muller Constr. Co. v New York Tel. Co.,* 50 AD2d 580; *Oleet v Pennsylvania Exch. Bank,* 285 App Div 411). The State did not take undue advantage of claimant by attempting to recover what had been wrongfully taken. Thus, the purported factual issues of capacity to contract and economic duress are, at best, "a shadowy semblance" *(Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338, 341) of triable issues and fail to create the requisite doubt that compels denial of a motion for summary judgment *(Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439).

Next, even assuming *arguendo* that claimant's contention of duress had, at the time of contracting, May 22 and June 12, 1973, some validity so as to raise a triable issue, his conduct subsequent to those dates ratified the voidable contracts and fleshed out the State's affirmative defense of accord and satisfaction. It is fundamental that a contract obtained by duress is merely voidable and may be subsequently ratified and affirmed (see *Joseph F. Egan, Inc. v City of New York*, 17 NY2d 90). Herein, there is no question that a dispute existed between the parties, nor is there any doubt that both contracts called for payments by the State of an amount less than claimant's billings. Since the claimant does not assert that he was uninformed as to the State's intentions, it follows that he was aware that the State intended that the $84,330 payment called for in the June 12, 1973 agreement was to be in full satisfaction of any amount owed to claimant for the year 1972. Claimant accepted these payments with a consciousness of the conditions imposed and in the absence of a return of the money is deemed to have accepted the conditions. The acceptance and cashing of the State's checks with knowledge of the negotiated conditions constituted an accord and satisfaction *(Carlton Credit Corp. v Atlantic Refining Co.,* 12 AD2d 613, affd 10 NY2d 723). There is no merit to claimant's contention that the $84,330 was a liquidated amount owed to him under pre-existing contracts and, accordingly, not in dispute. When the May 22 agreement is juxtaposed to the amended contract, dated June 12, 1973, it is clear that the amount set forth in the amended contract is a negotiated figure intended to defray the costs of all services rendered during 1972 and up to May 31, 1973. Thus, the negotiated figure of $84,330 is unliquidated "within the meaning of that term as applied to * * * accord and satisfaction" *(Nassoiy v Tomlinson,* 148 NY 326, 330).

Lastly, while it is true that neither the May 22 nor June 12, 1973 agreement is stamped "approved" by the Comptroller, it does not follow that they are invalid (State Finance Law, § 112, subd 2). It was by directive of the State Comptroller in November, 1972 that payments to claimant were stopped pending an investigation. The June 12, 1973 amended agreement was prompted by the Comptroller's refusal to pay claimant pursuant to the terms of the May 22, 1973 contract, and the Comptroller's office only issued checks payable to claimant pursuant to the June 12, 1973 amended agreement after it had informed the Department of Law, by letter dated June 13,

1973, that the settlement outlined in that contract was approved.

The order should be reversed, on the law, the defendant's motion should be granted and the claim dismissed, without costs.

SWEENEY, J. P., KANE, MAIN and LARKIN, JJ., concur.

Order reversed, on the law, defendant's motion granted and claim dismissed, without costs.