OPINION OF THE COURT
Edwin Margolis, J.
This claim is brought by Sullivan County to recover certain *811 moneys that it paid in connection with the settlement of two related Supreme Court actions. The State’s obligation is alleged to arise from a contract between it and Sullivan County.
The plaintiffs in the Supreme Court actions (Edwards v Sheriff’s Dept., Sup Ct, Sullivan County [settled May 26, 1982]; Matanis v Edwards, Sup Ct, Sullivan County [settled May 27, 1982]) had suffered personal injuries and property damage as a result of an automobile collision that occurred on January 20, 1978 on State Route 55 in Sullivan County. At that time, there was a contract, termed a snow and ice agreement, in force between the State and Sullivan County, whereby the county agreed to keep State highways within its boundaries clear of snow and ice, thus assuming one of the duties placed on the State by Highway Law § 12. In return, the State agreed, among other things, to "be responsible for any loss with respect to any tort claim arising from or occasioned by the manner of [the county’s] performance” under the contract. Paragraph (12) of the contract further provided that the Commissioner of Transportation: "shall, at his option, either elect to defend any action brought against a municipality or call upon the municipality to defend such an action. In the event that the municipality defends the action the state shall reimburse the municipality for all necessary expenses including litigation expenses incurred by the municipality.”
After some initial indecision as to whether the State or the county would defend the negligence actions arising from the January 20, 1978 accident, the State decided that the actions were to be defended by the State’s insurer, Continental Insurance Company. The two actions were consolidated and eventually trial was set for May 26, 1982.
On the morning of trial, approximately four years after Continental assumed Sullivan County’s defense, Richard J. Nealon, Esq., Continental’s trial attorney in these actions, telephoned William Rosen, then Sullivan County Attorney, and informed him that Continental Insurance Company and all other parties had agreed to settle the cases. The sum of $20,000 was to be paid the Edwards plaintiffs on behalf of the County of Sullivan and $12,500 was to be paid the Matanis plaintiff on behalf of the county. (The total settlement figures were higher because of contributions by other named defendants.) Mr. Rosen testified at trial in this court that, during the May 26, 1982 telephone conversation, Mr. Nealon informed him that Continental would provide only $10,000 toward the amount due each set of plaintiffs and that the *812 balance of $10,000 (for Edwards) and $2,500 (for Matanis) would have to be paid directly out of county funds. According to Mr. Rosen, he decided, on behalf of Sullivan County, that it would be the "better part of valor” to acquiesce to this settlement under protest, rather than to assume the defense of the county at that late date with absolutely no preparation, thereby risking the "possibility of a more significant recovery”. (Quotations are from the court’s trial notes.)
The following day, Mr. Rosen appeared in Supreme Court and made the following statement: "I agree with what Mr. Nealon has said, that we are reserving our rights against the [insurance] company; that we are paying this sum of money in both cases under protest. I’d also indicate that I was advised [by Mr. Nealon] that the company allegedly had notified the County at some time in the past, after the case had been instituted, that the County was advised that there was a limitation or that the company was indicating that there would be some limitation on the liability of the company to pay any judgment or settlement that arose out of this case. I have examined the Counties’ [sic] files in each of the cases and have no record of any such communication from the company.” Significantly, counsel for defendant acknowledged in his summation before this court that a thorough search of the State’s files also failed to reveal any evidence that Continental had disclaimed liability prior to May 26, 1982.
On June 14, 1982, the Board of Supervisors of Sullivan County passed Resolution No. 245, which authorized payment of $12,500 to the Supreme Court plaintiffs. This resolution stated that "the insurance company providing coverage disclaimed its liability for payment resulting from alleged acts of negligence on the part of the County for failure to close Route 55 under the existing weather conditions”.
Both the documentary evidence and the unrefuted testimony of Mr. Rosen, together with the concession of the State’s counsel on summation, establish to the court’s satisfaction that Continental first raised the issue of partial disclaimer on May 26, 1982, when trial of the Supreme Court cases was to begin.
The present claim was brought by Sullivan County to recover $12,500 on the theory that the State was obligated to indemnify it for such loss under the snow and ice agreement, and that its stipulation in Supreme Court to pay $12,500 was coerced. The State’s position on this issue is that the $12,500 *813 was paid in satisfaction of liability arising from negligent acts of Sullivan County other than those connected with the county’s duties under the snow and ice agreement. The State also denies the allegation of coercion and asserts that, in any event, it was in no way involved in the dealings between the county and Continental.
On the record in this case, claimant has failed to prove by a preponderance of the evidence that the portion of the settlement it paid was due to its negligence in removing snow and ice from the State highway. Although Mr. Rosen expressed his opinion that all allegations in the complaints were "snow and ice removal related”, a review of the complaints themselves reveals that they contain a number of allegations against the county directed toward activity other than snow and ice removal (e.g., failure to close the road). Consequently, the State cannot be held liable under its contractual duty to indemnify the county for any losses with respect to tort claims "arising from or occasioned by” the county’s performance of its contractual task.
Also, claimant’s allegation of coercion simply was not proven. The linchpin of this argument is that the county had to agree to the proposed settlement or be prepared to go to trial at that time. The county makes the bald statement, on page five of its pretrial brief, that "the Court was not going to extend the time of the parties to try the case.” However, there is an absolute failure of proof with respect to this contention; there is no evidence that claimant ever moved for an adjournment, let alone that such motion was denied. It appears to the court that the real reason for claimant’s precipitous entry into the settlement agreement was that the county was apprehensive about the amount of the judgment that a jury would render. However, we find no economic necessity that required the county to settle rather than try the case. (Grubel v Union Mut. Life Ins. Co., 54 AD2d 686; Landers v State of New York, 56 AD2d 105, 107; Fehlhaber Corp. v State of New York, 65 AD2d 119.) Moreover, in the instant case, as distinguished from claimant’s argument, the county did at all times possess an adequate legal remedy, as evidenced by the very case at bar. (See generally, Adrico Realty Corp. v City of New York, 250 NY 29, 40.)
However, the underlying rationale of the coercion charge is, in essence, that of wrongful conduct by the insurance carrier in disclaiming liability on the morning of trial and thereby depriving the county of the opportunity to prepare and inter *814 pose effective defenses in the Supreme Court actions. It is well settled that an insurer and/or indemnitor that owes the duty of indemnification and of defense is estopped from disclaiming liability unless it does so in a timely fashion so as not to prejudice the beneficiary. Prejudice is assumed when a party is prevented, by lack of timely notice, from conducting or participating in its own defense. (Schiff Assocs. v Flack, 51 NY2d 692, 699; O’Dowd v American Sur. Co., 3 NY2d 347; Caprari v Hartford Acc. & Indem. Co., 69 Misc 2d 354, 361.) Even if there is only partial disclaimer, notice of that limitation must be served in a timely fashion. (Reliance Ins. Cos. v Daly, 67 Misc 2d 23, 25, mod on other grounds 38 AD2d 715.) Moreover, the Insurance Law, then section 167 (8), now section 3420 (d), requires an insurer to provide "reasonably prompt” notice of disclaimer of liability. Clearly, it is the antithesis of "reasonably prompt” notice and the height of prejudice for an insurance carrier to disclaim liability on the morning of trial. (See, Caprari v Hartford Acc. & Indem. Co., 69 Misc 2d 354, 360, supra.) The court finds that the course of conduct followed by Continental in this case perpetrated an actionable wrong on Sullivan County by preventing the county from preparing and interposing its own defense in the Supreme Court actions.
The issue now to be decided is whether the wrong committed by Continental can be vicariously imputed to the State. The legal relationship between the State, the county and Continental, in connection with the defense of Sullivan County pursuant to its contract with the State, is governed by the law of agency. One standard definition of agency is "the relation which results where one person, called the principal, authorizes another, called the agent, to act for him, with more or less discretionary power, in business dealings with third persons” (2A CJS, Agency, § 4 [a]). When the State elected to defend Sullivan County and arrange for that defense to be conducted by Continental, an agency relationship was established between the State and Continental.
An agent’s relationship with a principal may be that of master-servant, independent contractor or nonservant agent. (Restatement [Second] of Agency § 2.) The essential distinction between master-servant agent, on the one hand, and independent contractor or nonservant agent, on the other, is that in the case of an independent contractor or nonservant agent the principal directs the agent’s actions only with respect to the result, while in the case of a master-servant agent, the princi *815 pal also directs the means by which the result is to be achieved. (See, 2A CJS, Agency, § 12; Prosser and Keeton, Torts § 70 [5th ed].) It is a universal rule that principals are liable for the contractual and tortious wrongs of their master-servant agents acting within the scope of their employment. (Becker v City of New York, 2 NY2d 226, 235.) Conversely, the general rule is that a principal is not liable for the wrongs of an independent contractor or nonservant agent. (Ostrander v Holm’s Vil. Travel, 87 Misc 2d 1049, 1051; Reuschlein and Gregory, Agency and Partnership ch 5; Prosser and Keeton, op. cit. § 71; 3 NY Jur 2d, Agency and Independent Contractors, § 342.)
However, the case at bar falls within a narrow exception to this general rule. Where the principal owes a nondelegable duty to another it cannot escape liability for improper performance of that duty by delegating the performance to an independent contractor or nonservant agent. (United N. Y. Sandy Hook Pilots Assn. v Rodermond Indus., 394 F2d 65, 74; Davidson v Madison Corp., 257 NY 120; Acetate Box Corp. v Johnsen, 193 Misc 54; Prosser and Keeton, op. cit.; 3 NY Jur 2d, Agency and Independent Contractors, § 358.) A contractual duty is one type of nondelegable duty that invokes this exception. (Dorkin v American Express Co., 74 Misc 2d 673, 675, affd 43 AD2d 877; see also, Miles v R & M Appliance Sales, 26 NY2d 451; Mduba v Benedictine Hosp., 52 AD2d 450.) A leading commentator has cogently stated the rule as follows: "[t]he performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped” (4 Corbin, Contracts § 866 [1951 ed & 1980 Supp]; see also, 3 Williston, Contracts § 411 [3d ed 1960]; Restatement [Second] of Contracts § 318 [3]).
Under the facts of this case, when the State elected to conduct the defense of Sullivan County it assumed a nondelegable contractual duty to do so. In these circumstances, the principal is as liable for the contractual and tortious wrongs of its independent contractor or nonservant agent as it would be if the agency relationship were that of master-servant.
Accordingly, the court holds that the State was responsible for the manner in which Continental defended Sullivan County. Since Continental’s performance was wrongful and prevented Sullivan County from preparing and presenting its *816 own defense or even being aware that it needed to do so, the State is liable to Sullivan County for the amount that the county paid in the Supreme Court settlements from its own funds.
Claimant is awarded the sum of $12,500 with appropriate interest from May 27, 1982, the date of settlement.