COUNTY OF SULLIVAN, Respondent, v STATE OF NEW YORK, Appellant.

Third Department, May 12, 1988

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Joseph Koczaja* and *Peter J. Dooley* of counsel), for appellant.

*Michael C. Davidoff, County Attorney (Josephine Victoria Finn* of counsel), for respondent.

**OPINION OF THE COURT**

WEISS, J.

This case originated in a two-car collision during a snowstorm on State Route 55 in Sullivan County on January 20, 1978. Both drivers commenced actions in Supreme Court against various parties, including claimant, for having negligently maintained, inspected and controlled the highway. At the time of the accident, a "Snow and Ice Agreement" (herein-

after the Agreement) between the State and claimant was in effect, pursuant to which the State paid claimant to remove snow and ice from all State roads within its borders, including Route 55 (see, Highway Law § 12). Additionally, the State agreed to remain "responsible for any loss with respect to any tort claim arising from or occasioned by the manner of performance of the functions under this agreement". The State contractually held the option of either defending any actions itself or reimbursing claimant for its own defense.

Upon receipt of the relevant pleadings, claimant timely notified the State through the Department of Transportation. After some initial confusion, the State elected to have its liability insurance carrier, Continental Insurance Company, defend the suits against claimant. From September 1978 until May 26, 1982, the morning set for trial, claimant did not participate in, or have knowledge of events in, the actions. That morning, Continental's attorney, Richard J. Nealon, telephoned William C. Rosen, claimant's attorney, and advised that, despite the potential for a significant damage award, a reasonable settlement of the case could be reached provided claimant contributed to the proposed settlement. According to Rosen, claimant had received no previous notice that Continental would partially disclaim responsibility for the accident. Nonetheless, on May 26 and 27, 1982, both Supreme Court actions were settled. Pursuant to an oral stipulation in court on the record, Continental agreed to pay $10,000 on claimant's behalf in each action, while claimant agreed to pay an additional $2,500 in one action and $10,000 in the other.

Thereafter, claimant commenced the instant action in the Court of Claims against the State to recover the $12,500 paid to settle the two Supreme Court actions, alleging that the State breached the Agreement by failing to pay the entire settlement and that the State provided an untimely notice of disclaimer, effectively coercing claimant's participation in the settlement. The State primarily countered that claimant failed to establish a breach of the Agreement since the stipulation settled claims based upon activities not covered by the Agreement, e.g., inadequate warning and traffic control. After a trial, the Court of Claims accepted the State's position, noting that the State's obligation to indemnify claimant was limited to tort claims arising from claimant's snow and ice removal activities. The court opined that, since the settlement satisfied claims outside the scope of the Agreement, Continental's refusal to pay part of the settlement did not necessarily

constitute a breach. The Court of Claims did find, however, that Continental committed an "actionable wrong" against claimant by failing to give timely notice of its partial disclaimer, and attributed this breach to the State via its agency relationship with Continental (135 Misc 2d 810, 814). We concur in this assessment.

■ Initially, we reject the State's assertion that claimant failed to preserve its right to indemnification from the State during the settlement before Supreme Court. In agreeing to participate in the settlement, Rosen stipulated "that we are reserving our rights against the [insurance] company; that we are paying this sum of money in both cases under protest". While we recognize that Rosen expressly limited his reservation to Continental, and not the State, he explained at trial that at the time of settlement he did not realize Continental was actually the State's insurer, rather than claimant's general liability insurance carrier. Upon discovering this error, Rosen filed a notice of claim against the State for breach of contract, which included facts outlining an untimely disclaimer of coverage. Given the precipitous nature of the settlement, and the fact that Rosen's office did not actually participate in the defense for some four years, we cannot agree that Rosen waived claimant's indemnification rights against the State. Under the circumstances presented, the reservation against Continental was effectively a reservation against the State.

■ The question is whether Continental breached its duty to defend claimant. By the terms of the Agreement, the State owed a duty "to defend any action brought against" claimant, which responsibility it delegated to its insurer. Continental was provided with copies of the pleadings in 1978 and presumably discerned that allegations were made therein against claimant outside the scope of the Agreement. From that juncture, Continental exercised complete control over the defense and yet did not provide notice of a partial disclaimer until May 26, 1982, the first day set for trial. It is well established that an insurer which defends an action on an insured's behalf, without timely disclaiming a known limitation as to coverage, may be estopped from later asserting the relevant defense (see, Schiff Assocs. v Flack, 51 NY2d 692, 699; O'Dowd v American Sur. Co., 3 NY2d 347, 355). By statute, a notice of disclaimer must be provided "as soon as is reasonably possible" (Insurance Law § 3420 [d]). In our view, notice first provided on the verge of trial, four years after Continen-

tal had complete control over the litigation, is untimely and prejudicial as a matter of law *(see, Hartford Ins. Group v Mello,* 81 AD2d 577, 578; *cf., O'Dowd v American Sur. Co., supra; Touchette Corp. v Merchants Mut. Ins. Co.,* 76 AD2d 7, 12). The Court of Claims properly held that Continental was estopped from denying coverage and had breached its duty to defend by failing to cover the entire settlement. Claimant's actual participation in the settlement did not vitiate its right to recover for this breach of duty *(see, Cardinal v State of New York,* 304 NY 400, 410, *cert denied* 345 US 918). Moreover, since Continental actively participated in fixing the amount of the settlement, further proof as to the reasonableness of the amount paid was not required *(see,* 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 79, at 146-147).

■ The controversy finally distills to whether Continental's breach may be imputed to the State. In its brief, the State properly characterizes the relationship between it and Continental as a "principal-nonservant agent relationship". The State retained Continental to provide a defense of the lawsuits without otherwise having control over the details of that defense *(see,* Restatement [Second] of Agency § 250, comment a [1958]). While a principal is generally not liable for the torts of its nonservant agents, an exception exists where the principal owes a third party a nondelegable duty which the agent has been retained to fulfill *(see, Schwartz v Merola Bros. Constr. Corp.,* 290 NY 145, 152; *Davidson v Madison Corp.,* 257 NY 120, 125; *Dorkin v American Express Co.,* 74 Misc 2d 673, 675, *affd* 43 AD2d 877). Here, the State was contractually obligated to defend claimant in the two Supreme Court actions. The delegation of this responsibility to Continental did not alleviate the State's duty to provide a proper defense. Consequently, the Court of Claims properly held the State accountable for Continental's breach of the duty to defend occasioned by the tardy disclaimer.

KANE, J. P., LEVINE, HARVEY and MERCURE, JJ., concur.

Judgment affirmed, without costs.