**BOSTON OLD COLONY INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant–Appellant.**

**No. 110, Docket 89–7396.**

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1989.

Decided Nov. 16, 1989.

---

**1246**

Harvey J. Kaufman, New York City (Alexander, Ash, Schwartz & Cohen, P.C., Sheldon Bunin, of counsel), for defendant-appellant.

John J. McDonough, New York City (Alio and Caiati, of counsel), for plaintiff-appellee.

Before KAUFMAN, FEINBERG and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Lumbermens Mutual Casualty Co. (Lumbermens) appeals from a judgment of the United States District Court for the Southern District of New York, Kevin T. Duffy, J., granting the motion for summary judgment of plaintiff-appellee Boston Old Colony Insurance Co. (Boston). Boston brought this diversity case against Lumbermens after Lumbermens denied any liability in connection with the settlement of a lawsuit arising out of a car accident. The district court held that Lumbermens was liable to Boston, and ordered Lumbermens to pay part of the cost of the settlement. We affirm the judgment for Boston, although not on the ground relied on by the district court.

### Background

In late 1981, Lumbermens issued an automobile insurance policy to Dr. Eugene Bodian. This policy provided liability coverage of $100,000. By the summer of 1982, Dr. Bodian had decided to change insurance brokers, and did not make the installment premium payments called for by bills sent by Lumbermens during the months of July and August. However, because Lumbermens billed its customers for premiums well in advance, Dr. Bodian was still insured with Lumbermens through October 3, 1982.

In August 1982, Dr. Bodian took out an insurance policy with Boston. The Boston policy provided $500,000 of liability coverage, and became effective at 12:01 a.m. on August 31, 1982. As it happened, while driving the family car on the afternoon of August 31, Dr. Bodian's wife had an accident in which a passenger in the car was seriously injured.

In February 1983, Boston's adjusting firm informed Lumbermens of the accident, the two policies and the "dual coverage," and asked Lumbermens to "work out some sort of agreement" to deal with the situation. For the next three years, Lumbermens consistently acted as though its policy with Dr. Bodian was in force along with Boston's at the time of the accident. For example, Lumbermens sent a memorandum to Boston stating that it would pay 50 per cent of all no-fault bills. Indeed, Lumbermens paid one-half of the no-fault bills of Mrs. Bodian and of her passenger. It also indicated that it would pay, up to its reserve, 50 per cent of the liability assessed against the Bodians.

However, on the eve of the trial of the lawsuit brought by Mrs. Bodian's passenger against the Bodians, Lumbermens began to waffle on its commitment to pay 50 per cent of the Bodians' liability. The same day that jury selection began, Lumbermens declared that it would pay 50 per cent, but only up to $50,000, of liability. Three days later, however, it sent a letter to Boston stating that it would no longer split the liability, but would instead limit its contribution to its pro rata share. Presumably, this meant that Lumbermens would pay only one-sixth of any settlement, since the limit of its policy was $100,000 and that of the Boston policy $500,000. This letter made no mention of the $50,000 limit.

At trial, the jury found Mrs. Bodian 55 per cent responsible for the injuries of her passenger. After the verdict on liability, but before the trial on damages, Lumbermens again changed its position on the issue of its liability. Although it had initially extended settlement authority of $50,000 to Boston's attorney and participated in settlement discussions, Lumbermens withdrew that authority when Bos-

ton's attorney proposed settling the case for a sum that Lumbermens deemed too high. Then, after Boston settled with the passenger for $480,000, Lumbermens simply refused to contribute anything at all. In November 1986, Lumbermens wrote Dr. Bodian disclaiming, for the first time, any liability. At no time prior to this disclaimer had Lumbermens sent Dr. Bodian a reservation of rights letter or a denial of claim letter.

Boston subsequently brought the action against Lumbermens now before us, seeking partial reimbursement for the costs connected with the settlement. Lumbermens' principal defense was § 313(1)(a) of the New York Vehicle and Traffic Law, reproduced in the margin.[1] It argued that under § 313(1)(a), its policy with Dr. Bodian terminated on 12:01 a.m. of August 31, 1982—i.e., the day on which the Boston policy took effect. Therefore, according to Lumbermens, it was under no obligation to the insured and could not be required to contribute to the settlement. After both parties moved for summary judgment, the district court ruled in favor of Boston, holding that the Lumbermens policy was not cancelled by § 313(1)(a). 710 F.Supp. 913.

## Discussion

On appeal, Lumbermens argues that the district court misinterpreted § 313(1)(a). We need not reach this question, however. We agree with Boston that whatever the scope of § 313(1)(a), Lumbermens is estopped from denying liability.

"It is well settled" under New York law, which governs here, that an insurer "that owes the duty of indemnification and of defense is estopped from disclaiming liability unless it does so in a timely fashion so as not to prejudice the beneficiary." *County of Sullivan v. State*, 135 Misc.2d 810, 814, 517 N.Y.S.2d 671 (N.Y.Ct.Cl.1987), aff'd, 137 A.D.2d 165, 528 N.Y.S.2d 227 (3d Dep't 1988). New York courts will enforce

this doctrine of "equitable estoppel" where, for example, "an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case." *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980). "In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so." *Id.*

Here, Lumbermens' attempt to disclaim liability was untimely. "By statute, a notice of disclaimer must be provided 'as soon as is reasonably possible.'" *County of Sullivan*, 137 A.D.2d at 168, 528 N.Y. S.2d 227 (quoting N.Y.Ins.Law § 3420(d) (McKinney 1985)); see also *Hartford Ins. Group v. Mello*, 81 A.D.2d 577, 578, 437 N.Y.S.2d 433 (2d Dep't 1981) (notice of disclaimer must be timely in order to reserve insurer's right). Lumbermens, however, did not disclaim liability until November 1986—some ten months after the settlement, and more than four years after the accident occurred. This is far after the time Lumbermens could reasonably have disclaimed liability. Cf. *Allstate Ins. Co. v. Gross*, 27 N.Y.2d 263, 266, 317 N.Y.S.2d 309, 265 N.E.2d 736 (1970) (insurance company estopped; seven-month delay in disclaiming liability); *State Farm Mutual Ins. Co. v. Pizzonia*, 147 A.D.2d 703, 704, 538 N.Y.S.2d 312 (2d Dep't 1989) (same; delay of two and one-half years in disclaiming liability). Indeed, even if we were to construe Lumbermens' attempts to limit its exposure at the time of trial as a disclaimer, this disclaimer would still not be timely. "Clearly, it is the antithesis of 'reasonably prompt' notice ... for an insurance carrier to disclaim liability on the morning of trial." *County of Sullivan*, 135 Misc.2d at 814, 517 N.Y.S.2d 671.

Furthermore, Boston and the Bodians were prejudiced by Lumbermens' disclaimer. Lumbermens contends that there was

1. Section 313(1)(a) provides, in pertinent part:
No contract of insurance ... shall be terminated by cancellation by the insurer until at least twenty days after mailing to the named insured ... a notice of termination ... except where the cancellation is for non-payment of premium in which case fifteen days notice of cancellation by the insurer shall be sufficient,

provided, however, if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously in effect....

N.Y.Veh. & Traf.Law § 313(1)(a) (McKinney 1986).

no prejudice, pointing out that Boston settled the claim for less than the $500,000 policy limit. We do not agree. Even if Lumbermens had disclaimed liability ten months earlier, on the morning of trial, the disclaimer would still have been prejudicial. "In our view, notice first provided on the verge of trial ... is untimely and prejudicial as a matter of law." *County of Sullivan*, 137 A.D.2d at 168–69, 528 N.Y. S.2d 227; see also *Hartford Ins. Group*, 81 A.D.2d at 578, 437 N.Y.S.2d 433 (insurer's attempt to disclaim liability after underlying action had been placed on trial calendar held prejudicial). In addition, this was a case of serious personal injury with a real peril of personal liability when the insurance policy limits were exhausted. The tardy disclaimer was prejudicial because the Bodians had already taken actions that could not be undone. The pre-trial negotiating stance of the Bodians and Boston— including the resolve to go to trial—was undoubtedly stiffened, and the Bodians' personal exposure unreasonably made more likely, by the belief that there was an additional $100,000 upon which to draw. The threat of such exposure was prejudicial even though it never ripened into economic harm. The late disclaimer, in effect, prevented the Bodians from properly controlling their own defense.

Lumbermens also contends that estoppel is inappropriate because Boston "misled" Lumbermens into believing that Lumbermens' policy covered the accident. We are not persuaded. Surely, Lumbermens ought to know which of its policies are terminated, and which are not. And even assuming that Boston somehow tried to pull the wool over Lumbermens' eyes—an assumption, we note, that the record does not support—Lumbermens' failure to investigate adequately its own records undermines its position.

Finally, we reject Lumbermens' claims that the district court erred in awarding attorneys fees to Boston, and in denying Lumbermens' request for sanctions pursuant to Fed.R.Civ.P. 11 because Boston asserted allegedly frivolous claims that it later withdrew. As to the former,

Boston set out the time that it had spent in defending the Bodians, as well as its hourly rate for that defense, in its statement filed pursuant to the Southern District's Local Rule 3(g). In opposing Boston's motion for summary judgment, Lumbermens did not contest these figures. Instead, it waited until after the summary judgment motion was decided before raising the fee issue in a motion to vacate the judgment. The district court refused to do so, and we cannot say that it erred in following that course. Similarly, with regard to sanctions, we are not persuaded that the district court abused its discretion.

We conclude that Lumbermens was estopped from denying its liability under the policy to Boston. The judgment of the district court is affirmed.