UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CARROLLTON BANK, a Maryland
Corporation,
                    *Plaintiff-Appellee,*

            v.

FUJITSU TRANSACTION SOLUTIONS,
INCORPORATED,
                    *Defendant-Appellant,*

            and

FUJITSU-ICL SYSTEMS, INCORPORATED,
a Delaware Corporation,
                    *Defendant.*

No. 02-1334

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-01-1814-AMD)

Argued: December 6, 2002

Decided: January 23, 2003

Before NIEMEYER and WILLIAMS, Circuit Judges, and
Henry M. HERLONG, Jr., United States District Judge for the
District of South Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Gaele McLaughlin Barthold, COZEN O'CONNOR, Phil-
adelphia, Pennsylvania, for Appellant. Glenn Ephraim Bushel, BRO-

CATO, PRICE & BUSHEL, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** John F. Mullen, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellant. David M. Wyand, BROCATO, PRICE & BUSHEL, P.A., Baltimore, Maryland; Robert J. Parsons, II, ROGERS, MOORE & ROGERS, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Carrollton Bank commenced this breach-of-contract action against Fujitsu Transaction Solutions, Inc., over Fujitsu's refusal to pay for funds missing from Carrollton Bank's automatic teller machines that were serviced by Fujitsu. The district court granted summary judgment in favor of Carrollton Bank, holding that the plain language of the contract created Fujitsu's liability, and we affirm.

I

On October 27, 1998, Carrollton Bank entered into a contract with Fujitsu Transaction Solutions, Inc. ("Fujitsu" or "FJ-ICL"), which provided that Carrollton Bank would purchase automatic teller machines ("ATMs") from Fujitsu and that Fujitsu would install them in various Wal-Mart stores in the mid-Atlantic region and provide services and equipment to the ATMs. Two months later, by amendment to the contract, the parties agreed that Fujitsu would provide cash replenishment services to the machines. The contract as amended stated that Fujitsu would provide these services through "[its] subcontractor, Tri-State Armored Services, Inc." ("Tri-State"). The cash replenishment services consisted of removing depleted cassettes of cash from the machines on a weekly basis and replacing them with ones filled with cash transferred to Fujitsu by wire transfers. Also, Fujitsu agreed to wire back to Carrollton Bank any cash remaining in the removed cassettes.

The contract allocated losses from the case replenishment services as follows:

7.1   FJ-ICL shall be responsible for payment of ATM losses if the ATM monitoring system and/or Customer's security alarm records show, or the preponderance of the evidence relating to the loss shows, that (i) employees, agents, subcontractors or any third person authorized by FJ-ICL had access to the ATM vault since that ATM was last balanced and that (ii) there is no credible evidence establishing that the loss resulted from mechanical, software, or network failure or the act, omission or dishonesty of third persons not aided or abetted by FJ-ICL. CUSTOMER AGREES THAT FJ-ICL IS NOT TAKING ON THE OBLIGATION OF ABSOLUTE INSURER IN THE PERFORMANCE OF THIS AGREEMENT.

7.2   FJ-ICL shall not be liable for claims, actions, damages, liabilities, losses and expenses, arising out of or in connection with any ATM loss to the extent such claim is the result of (a) currency dispensed due to AMT [sic] software or network malfunction; (b) Nominal Losses [loss less than or equal to $100]; (c) access by third persons not authorized by FJ-ICL; or (d) damages from breakage or vandalism.

The contract also contained a "Force Majeure" clause as follows:

FJ-ICL will not be liable for any delay or for failure to perform its obligations hereunder resulting from any cause beyond FJ-ICL's reasonable control, including, but not limited to: Customer's failure to timely supply FJ-ICL with necessary data, information or specifications if in fact Customer has agreed to supply any such data, information or specifications to FJ-ICL; any such changes in any such data, information or specifications made by Customer; acts of God; weather; fire; explosions; floods; strikes; work stoppages; slowdowns or other industrial disputes; accidents; riots or civil disturbances; dangerous conditions which present a threat to the safety of FJ-ICL personnel; acts of government; inability to obtain any license or consent necessary

in respect of any unit of Equipment; and delays by suppliers or material shortages. Scheduled performance dates shall be extended by any such causes.

In February 2001, Carrollton Bank discovered several discrepancies in the ATM funds. Specifically, on February 15, 16, 20, and 21, a total of $472,480, which consisted of both replenishment funds meant for the ATMs and residual funds meant for Carrollton Bank, was unaccounted for. Carrollton Bank informed Fujitsu of the missing funds, and the two parties entered negotiations about Fujitsu's responsibility for the loss. Concurrent with these negotiations, Tri-State, Fujitsu's subcontractor, filed a petition in bankruptcy, and several Tri-State executives pleaded guilty to stealing millions of dollars from several of its customer banks, including the missing funds of Carrollton Bank. When the parties were unable to reach agreement over responsibility for the losses, Carrollton Bank commenced this action for breach of contract. Carrollton Bank alleged that the contract required Fujitsu to reimburse Carrollton Bank for the lost funds.

On cross-motions for summary judgment, the district court concluded that the contract unambiguously required Fujitsu to pay Carrollton Bank for the lost funds and entered judgment in favor of Carrollton Bank in the amount of $515,820.95 for the lost funds and prejudgment interest. Fujitsu timely appealed.

II

New York contract law, which the parties agree governs the present dispute, adheres to the well-established and unremarkable principle that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990).

Under the contract, Fujitsu clearly undertook to provide cash replenishment services to Carrollton Bank's ATMs. It agreed to remove cash-depleted cassettes from the ATMs and to replace them with replenished ones, with the cash supplied by Carrollton Bank. Moreover, it agreed to be responsible for losses in this process, except when the losses resulted from specified reasons not here applicable.

The district court correctly relied on these contractual provisions to find Fujitsu liable for the losses.

Contending that the district court erred, Fujitsu argues that the "Force Majeure" clause excuses it from liability. In relevant part, the clause states that Fujitsu "will not be liable for any delay or for failure to perform its obligations hereunder resulting from any cause beyond [Fujitsu]'s reasonable control, including, but not limited to [certain identified events]." Fujitsu argues that the language of "any cause beyond [its] reasonable control" applies to the loss of funds arising from Tri-State's illegal conduct and thus that Fujitsu is not liable. New York law, however, requires a narrow interpretation of force majeure clauses. *See Kel Kim Corp. v. Central Markets, Inc.*, 519 N.E.2d 295 (N.Y. 1987). "The principle of interpretation applicable to such clauses is that the general words are not to be given expansive meaning; they are confined to things of the same kind or nature as the particular matters mentioned." *Id.* at 296-97. Although the clause specifies that the list "includ[es], but [is] not limited to" those events identified, the list nevertheless only addresses certain types of events, such as natural disasters, acts by Carrollton Bank, and other events similarly beyond the control of Fujitsu. Theft by a subcontractor — being within the principal contractor's control — is materially different from those events, and we thus decline to adopt Fujitsu's expansive interpretation of the clause.

Fujitsu also argues that it is not responsible because of the doctrine of impossibility. The doctrine, narrow in scope, excuses a party from liability where "the means of performance makes performance objectively impossible." *Id.* at 296. The doctrine, however, does not apply where the party could have foreseen and guarded against its ensuing liability. *Id.* To guard against an obligation to pay for loss caused by Tri-State, Fujitsu could have negotiated different terms with Carrollton Bank or contracted separately with Tri-State regarding the burden of loss.

Fujitsu also argues that the "Allocation of Liability" clause relieves it of liability. The provision states in relevant part:

> 7.1   FJ-ICL shall be responsible for payment of ATM losses if . . . (i) employees, agents, subcontractors or any

third person authorized by FJ-ICL had access to the ATM vault since that ATM was last balanced and that (ii) there is no credible evidence establishing that the loss resulted from . . . the act, omission or dishonesty of third persons not aided or abetted by FJ-ICL. CUSTOMER AGREES THAT FJ-ICL IS NOT TAKING ON THE OBLIGATION OF ABSOLUTE INSURER IN THE PERFORMANCE OF THIS AGREEMENT.

7.2   FJ-ICL shall not be liable for claims . . . arising out of . . . any ATM loss to the extent such claim is the result of . . . access by third persons not authorized by FJ-ICL.

Fujitsu contends that Tri-State was a "third person" neither aided or abetted by Fujitsu nor authorized by Fujitsu to retain Carrollton Bank's funds and thus that sections 7.1 and 7.2 shield it from liability. It also argues that the clause's declaration that Fujitsu is not an "absolute insurer" of the contract confirms its lack of liability in this case. Finally, it argues that, at the least, there exists a factual dispute regarding whether the loss at issue was an "ATM loss" within the meaning of the clause.

We conclude that Fujitsu's interpretation of the clause lacks merit. The language of the clause unambiguously triggers Fujitsu's liability for losses in connection with replenishment of the ATMs. Moreover, when reading the clause in context, it is clear that the parties anticipated losses related to the replenishment services by outlining a mechanism for the services, the procedure for determining any discrepancies resulting from those services, and, if indeed there is a loss, the allocation of that loss. As the third step in that outline, section 7.1(i) places liability on Fujitsu where loss occurred as a result of replenishment services by Fujitsu or its subcontractor. Given that the loss at issue here arose from replenishment services, Fujitsu bears the burden of liability.

Fujitsu is not saved by the exclusion from liability, in sections 7.1(ii) and 7.2, of acts by third persons. Because both "subcontractor" and "third person" are used in 7.1(i), the use of only the latter term in 7.1(ii) and in 7.2 compels the conclusion that the acts of "subcontractors" are not covered in those provisions excusing Fujitsu from

liability for the acts of "third persons." Tri-State, identified in the contract as Fujitsu's subcontractor, is thus not a "third person" within the meaning of the clause, and sections 7.1(ii) and 7.2 do not shield Fujitsu from liability for Tri-State's acts. In addition, the statement in section 7.1 that Fujitsu is not an "absolute insurer" does nothing to lessen Fujitsu's obligation to reimburse Carrollton Bank. It merely confirms that there are certain circumstances in which Fujitsu would not be liable — namely those identified in sections 7.1(ii) and 7.2. Finally, because the loss arose as a result of Fujitsu's replenishment services to the ATMs, the loss is an "ATM loss" and the "Allocation of Liability" provision clearly applies.

Finally, Fujitsu argues that factual disputes exist concerning (1) whether Tri-State was indeed Fujitsu's subcontractor, (2) whether Fujitsu had a nondelegable duty to Carrollton Bank, and (3) whether the criminal nature of Tri-State's conduct excuses Fujitsu from liability. We have reviewed the record and find no genuine disputes as to these factual issues. The contract identifies Tri-State as Fujitsu's subcontractor; Fujitsu had a nondelegable contractual duty to replenish the ATMs according to the parties' agreement, *see County of Sullivan v. New York*, 517 N.Y.S.2d 671, 674-75 (N.Y. Ct. Cl. 1987) ("A contractual duty is one type of nondelegable duty. . . ."); and the parties did not create an exception for the criminal conduct of a subcontractor. Fujitsu's reliance on *Babylon Associates v. County of Suffolk*, 475 N.Y.S.2d 869 (N.Y. App. Div. 1984), for the proposition that interpretation of the contract merits a trial, is misplaced because the agreement between Carrollton Bank and Fujitsu contractually obligates Fujitsu to reimburse Carrollton Bank for the losses associated with cash replenishment services. As a result, the contract controls and *Babylon*'s discussion of liability for criminal acts of subcontractors, under the contract at issue in that case, is irrelevant.

In sum, we affirm the summary judgment entered by the district court in favor of Carrollton Bank.

*AFFIRMED*